## DOLORES C. GELY DE AMADEO ET AL.

*v.*

## GUILLERMO RIEFKOHL.

---

San Juan, Equity, No. 654.

1. A person born of foreign parents in Porto Rico in 1862, and who is now forty-eight years of age, and who was never registered in the

### Gely de Amadeo v. Riefkohl.

consulates of his father's mother-country, but who, on the contrary, was registered in Porto Rico and in his father's mother-country as a Spanish subject when he went there to school, and who has always claimed to be a Spanish subject, both under the Spanish *régime* in Porto Rico, and who voted and held office as such, and who, after American occupation, claimed under the treaty of Paris to be a Porto Rican, and also held office and voted as such Porto Rican under American occupation, is in law a Porto Rican.

2. A person born in a country, even though of foreign parentage, who has always claimed to belong to the country in which he was born, and who has voted and held office therein, and all of whose property is situated therein, and who, after becoming of age, never claimed to belong to the country of his father, should, under the rule laid down in Boyd v. Nebraska, 143 U. S. 135, 36 L. ed. 103, 12 Sup. Ct. Rep. 375, have every favor indulged in favor of his claim of citizenship in the country to which he has thus adhered, and it is no part of the duty of a so-called United States court for mere purposes of jurisdiction to overthrow the intent of such person in that regard.

Opinion filed March 12, 1910.

---

*Messrs. A. J. Amadeo* and *E. S. Paine,* solicitors for complainants.

*Mr. Martin Travieso, Jr.,* solicitor for respondent.

RODEY, Judge, delivered the following opinion:

This is a bill in equity filed by a widow and her children as complainants, alleging themselves to be citizens and residents of Porto Rico, against the respondent who, they allege, is a subject of the Emperor of Germany, although a resident of Porto Rico.

They set up in their bill a peculiar state of affairs intended

to show that respondent, by a series of conspiracies and frauds, has possessed himself of a valuable estate of 392 cuerdas of land, situated near Maunabo, on this island, belonging to them, for which respondent, as they allege, obtained from the husband and father of complainants a deed absolute, but which they allege was only given as security for a relatively small debt, and was intended only to be, and in fact is but a mortgage, and that therefore, they, as heirs of their said late husband and father, are entitled to have the said alleged deed so declared, and be given the right to redeem the same on payment of the debt.

The issue we are called upon to settle is raised by respondent's plea to the jurisdiction,—he alleging that he is not a subject of the Emperor of Germany, but in truth and in fact is a citizen of and resident in Porto Rico, and that therefore, as the jurisdiction is based entirely upon the alleged diversity of citizenship of the parties, not this court, but the proper insular court should entertain the cause. This plea was duly traversed, and a trial was had before the court on the issue thus raised, by which the following facts were developed.

The respondent, Guillermo Riefkohl, was born in 1862 at Maunabo, on this island. His father was a German who had lived many years in Porto Rico before that time, and continued for many years thereafter, until his death, to so reside therein. His mother was a subject of the King of Denmark, and a native of Saint Thomas or some other Danish West India island, but had also, for several years previous to 1862, resided here in Porto Rico, and is still living here. It was also shown that respondent's father never changed his citizenship, but remained a German subject up to the time of his death, which occurred previous to American occupation of Porto Rico, and that during

Gely de Amadeo v. Riefkohl.

such time he held the office of vice consul of Germany on the island for several years. It was further shown that as soon as respondent was ten years of age he was sent to Germany to be educated, and remained there about twelve years thereafter before returning to Porto Rico, where he has ever since resided; that when he was about twenty years of age, and while still at school in Germany, he was called upon by the authorities of that empire for military service as a German subject, but that he denied being such, and insisted that he was a subject of the King of Spain, having been born and reared in Porto Rico, and in proof of such claim he procured from the Spanish consulate of that locality in Germany a certificate showing that he was there registered as such Spanish subject. After due investigation, the German authorities conceded the point that he was a subject of the King of Spain, and desisted from claiming allegiance or military service from him. It was also shown that respondent's mother had ever refused to permit him, while a child, to be registered in the local German consulate in Porto Rico, as a German subject, on the ground that he was a native-born Porto Rican, and her sympathies were French rather than German in the war between Germany and France that had only then recently ended. It was not made clear just how the boy came to be recorded in the Spanish consulate in Germany as a subject of the King of Spain, but it is manifest from the certificate introduced in evidence that he was so recorded there at that time, and the only inference we can draw from that fact is that his parents had, in fact, previous to sending him to Germany, or while he was there, so caused him to be recorded. It was further shown that respondent at all times during his life here in Porto Rico, while it was under Spanish rule, claimed to be a

Spanish subject, and that since American occupation he has claimed to be a Porto Rican. It was also in evidence that he held minor offices, such as serving in his town council and on tax boards, etc., both under the Spanish *régime* and after American occupation. He introduced several commissions given him by the officials, both under Spain and under Porto Rico, in proof of this statement. It was further shown that all his interests and property are located here in Porto Rico. He testified that he could not have attended school in Germany after he was eighteen years of age without undergoing military service, which he did not want to do, or unless he could satisfy that government that he was a subject of Spain; and that he did so, and that it has always been his intention to have it so. He did not state positively that it was his intention to ever return to Germany again, but he did state that, unless he was a Spanish subject, he could not stay in Germany between the ages of eighteen and forty-five years without rendering military service.

This state of facts, of course, raises the question as to whether respondent is now a Porto Rican or a subject of the Emperor of Germany, and, of course, it turns upon the facts as stated, and the laws of Spain regarding citizenship. The Civil Code of Spain of 1899, which we are informed is, as to citizenship, the same as the previous Codes, is as follows:

"Art. 17. The following are Spaniards: (1) Persons born in Spanish territory; (2) Children of a Spanish father or mother, even though they were born out of Spain; (3) foreigners who may have obtained naturalization papers; (4) those who, without said papers, may have acquired a residence in any town in the monarchy.

"Art. 18. Children, while they remain under the parental authority, have the nationality of their parents.

Gely de Amadeo v. Riefkohl.

"In order that those born of foreign parents in Spanish territory may enjoy the benefits granted them by No. 1 of art. 17, it shall be an indispensable requisite that the parents declare in the manner and before the officials specified in art. 19, that they choose in the name of their children the Spanish nationality, renouncing all others.

"Art. 19. The children of foreigners, born in Spanish possessions, must state within the year following their majority or emancipation, whether they desire to enjoy the citizenship of Spaniards, granted them by art. 17."

"Art. 25. In order that foreigners who have obtained naturalization papers, or acquired a residence in any town in the monarchy may enjoy Spanish nationality, they must previously renounce their former nationality, swear to the Constitution of the monarchy, and record themselves as Spaniards in the civil registry."

It will be seen that art. 18 aforesaid provides that it shall be an indispensable requisite that the parents declare in the manner and before the officials specified in art. 19 that they choose in the name of the child the Spanish nationality, renouncing all others. Now we cannot imagine how this boy could have appeared registered in the Spanish consulate in Germany, unless his parents had in fact complied with this requisite of the law for him, and we think that this finding also disposes of the requisites set forth in art. 25, supra. It is also stated that art. 1, subsec. 4 of the Spanish Constitution, defining who are Spaniards, says: "4. Those who, without such (naturalization) papers, may have acquired a residence in any town within the Spanish territory."

Counsel for complainants has filed a painstaking brief, in

Gely de Amadeo v. Riefkohl.

which he cites at considerable length from the Spanish Codes, and from the commentaries of Manresa and Scaevola thereon, besides citing a large number of American statutes and authorities. So interesting was it as that we examined it all with care, yet on the whole we feel constrained to hold that, apart from the general well-known principles regarding citizenship, the foregoing quotations from the Spanish law govern this case.

Here is a case where a man, who is now forty-eight years of age, was born in Porto Rico, and who, although he spent twelve years in Germany learning the language of his father, has never claimed German citizenship, but has always denied it, and in addition has asserted first his Spanish nationality and later his Porto Rican citizenship, and when testifying on this issue asserted his hope of soon becoming a citizen of the United States. He has held office in the island under both governments, all his interests are here, and he asserts he has no intention of removing elsewhere. Under such facts and circumstances it does seem to us, under the rule laid down by all the authorities, and particularly by the broad principle laid down by the Supreme Court of the United States in Boyd v. Nebraska, 143 U. S. 135, 36 L. ed. 103, 12 Sup. Ct. Rep. 375, that all doubts, if there are any, which we deny, should be resolved in favor of his claim. Of course it is well established that the jurisdiction of this court is special and limited, and that doubts ought not to be resolved in its favor, especially on a question of citizenship, but we do not think there is any doubt here, as we hold that respondent's parents, under the Spanish Code, properly registered him as a Spanish subject. The statement of counsel for complainants that respondent first denied his German citizenship in Germany, in 1882, to avoid military service, and that he is

now trying to assert Porto Rican citizenship simply to avoid accounting to complainants for their property, can have but little weight in the light of all the facts and the law as above set out. Surely there must be a remedy in the insular courts to recover this property, if the respondent is in fact unlawfully possessed of it, but even if there is not, it is no part of the duty of this court to assume jurisdiction it does not possess in an effort to aid any complainant. The remedy, if one is needed, is with the law-making power, not with the court. It cannot change or enlarge its own jurisdiction. We therefore hold that respondent is a Porto Rican, and this, of course, breaks the diversity of citizenship, and puts Porto Ricans on both sides of the case, which ousts the jurisdiction under our ruling in Vallecillo y Mandry v. Bertran, 2 Porto Rico Fed. Rep. 46. The plea will therefore be sustained, and the cause will be dismissed at the cost of the complainants, and an order to that effect will be entered.